# 13 CIV 1605

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| BARBARA WARD, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Civil Action No. |
| v. | **CLASS ACTION COMPLAINT** |
| THELADDERS.COM, INC. | |
| Defendant. | |

Plaintiff Barbara Ward ("Plaintiff"), by her attorneys, makes the following allegations against TheLadders.com, Inc. ("TheLadders" or "Defendant") pursuant to the investigations of counsel and upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge:

### NATURE OF THE ACTION

1.       From its inception until September, 2011, TheLadders scammed its customers into paying for its job board service by misrepresenting itself to be "a premium job site for only $100k+ jobs, and only $100k+ talent." In fact, TheLadders sold access to purported "$100k+" job listings that (1) did not exist, (2) did not pay $100k+, and/or (3) were not authorized to be posted on TheLadders by the employers.

2.       Unlike other online job boards which are free to join, TheLadders charged a premium subscription fee to members for "hand-screen[ing] every job post and recruiter so you only see real, open $100k+ jobs in your area." In reality, however, its job postings were not hand-screened. They were "scraped" from the Internet without authorization from employers or recruiters, and the employment opportunities were not for "real, open $100k+ jobs." Moreover, TheLadders had no process in place to ensure that these posted positions ever truly existed, remained open, or that they met its minimum advertised annual compensation criteria of $100k+.

3.      The scam began with TheLadders' free "basic membership" option which allowed members to see purported job listings available in their areas, but did not allow them to apply for jobs. If the ruse succeeded in convincing customers that the postings were for "real, open $100k+ jobs," then basic members had to upgrade to paid "premium memberships," which cost $30 a month or $180 a year, to submit applications for the purported job opportunities. Through this two-tiered sales pitch, TheLadders conned basic members into purchasing paid memberships for access to purported $100k+ jobs. But TheLadders' jobs database did not contain hand-screened job openings paying $100k+ as promised. Rather, it was bloated with unauthorized job postings for non-existent or stale positions, or positions that paid substantially less than $100k+.

4.      TheLadders also promised a free "expert resume critique" for its premium members. However, TheLadders did not actually review resumes that were submitted by its premium members. Instead of providing bona fide resume critiques as promised, TheLadders sent its members a form letter that failed to provide any resume criticism responsive to members' individual resumes. The sole purpose of the form letter was to up-sell members into useless paid resume re-writing services for applying to the bogus $100k+ positions on TheLadders' job board.

5.      TheLadders has generated an enormous amount of revenue from this scam. Defendant claims to have 5 million members, and news reports estimate that it generated annual revenue of $80 million in recent years. [1]

6.      Internet complaint forums are replete with narratives by TheLadders' victims. In an article on recruiting website *ERE.net*, Recruiter David Manaster noted that "There are a lot of people out there with a beef about the actual product at The Ladders, and the sheer volume of complainers gives them authenticity."[2]

---

[1] http://www.businessinsider.com/theladders-is-having-a-relatively-crappy-year-2010-9

[2] http://www.ere.net/2011/02/15/is-the-ladders-a-scam/

7.      As of February 15, 2011, upon typing "the ladders" into Google, the first "autocomplete" suggestion provided was "the ladders scam:"[3]





8.      This is a class action lawsuit against TheLadders for breach of contract, money had and received, breach of the implied covenant of good faith and fair dealing, violation of the Arkansas Deceptive and Unconscionable Trade Practices Act, and unjust enrichment. Through this lawsuit, Plaintiff seeks to recover, for herself and all other similarly situated premium members of TheLadders, a full refund of the subscription and service fees paid for the purported $100k+ job opportunities they were promised but did not receive.

## THE PARTIES

9.      Plaintiff Barbara Ward is a citizen of Arkansas, residing in Pulaski County, Arkansas.

10.     Defendant TheLadders.com, Inc. is a Delaware corporation with a principal place of business at 137 Varick St., New York, NY 10013.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from Defendant.

12.     Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391 because defendant TheLadders has a principal place of business in the district and witnesses are likely to

---

[3] *See id.*

be found within the district. Venue is also proper in this Court because TheLadders' Terms of Use provides that "[j]urisdiction for any claims arising under this agreement shall lie exclusively with the state or federal courts within New York State."

## FACTS COMMON TO ALL COUNTS

### *TheLadders Breached its Terms of Use*

13.    As alleged herein, TheLadders breached its contract and common law covenants with Plaintiff and other members of the Class by representing itself to be "a premium of job site for only $100k+ jobs, and only $100k+ talent," when in fact TheLadders' service was little more than a scheme to induce members of the public to join and pay for TheLadders' website based on false pretenses and misrepresentations about the quality and nature of the service and job postings it provided.

14.    As of 2010, TheLadders Terms of Use agreement ("the Agreement") falsely promised: "TheLadders reviews each job listing found online or submitted by recruiters and employers before it's posted to ensure it meets the criteria of a $100K+ position."

15.    The Agreement also incorporated terms found elsewhere on www.theladders.com, including those alleged herein. As of 2010, www.theladders.com prominently displayed a banner across its homepage reading "Find *Hand-Selected* And *Pre-Screened* Jobs That Are $100k+.[4]

---

[4] http://www.theladders.com, August 3, 2010 (emphasis added).

FIND HAND-SELECTED AND
PRE-SCREENED JOBS THAT ARE

# $100K+

OUR WRITERS HELP CRAFT
YOUR WINNING EXECUTIVE

# RESUME

TOP COMPANIES USE OUR
CANDIDATE DATABASE TO HIRE

# YOU

Where $100K+ talent finds $100K+ jobs

**JOIN THELADDERS**

SEARCH JOBS THAT HAVE BEEN HAND-SCREENED BY OUR EXPERTS

16.    TheLadders also promised on its website that its "experts pre-screen all jobs so they're always $100k+."

17.    However, TheLadders did not conduct such a review. The jobs listed on the site were neither "hand-selected" nor "pre-screened." TheLadders did not "ensure" that each job listing was $100k+. TheLadders did not even ensure that its postings offered current employment "positions" or "jobs."

18.    In fact, TheLadders "scraped" job postings from other websites without authorization. TheLadders had no contact with the employers or recruiters and did not pre-screen job posts as promised to ensure that they had not already been filled and that they paid $100k+.

19.    Plaintiff and members of the Class and Arkansas Subclass entered into the Agreement with TheLadders by subscribing to TheLadders' website, where the Agreement was posted.

20.     The site offered several subscription options. The "free basic" subscription allowed members to view jobs available in their areas, but did not allow them to apply for positions. "Premium" subscriptions allowed members to apply for positions as well, at a cost of $30 a month or $180 a year.

21.     Neither basic members nor premium members were ever notified that the jobs posted on the site were scraped from other sites without authorization or that TheLadders made no effort to determine whether and which positions were still open or how much they paid.

22.     Based on these misrepresentations, TheLadders conned basic members into purchasing paid memberships and failed to deliver on the promises made in its Agreement.

### Public Outcry in Response to TheLadders' Misconduct and Misrepresentations

23.     Blogs on the Internet are replete with complaints from employers and recruiters whose job posts were listed on TheLadders without authorization. For example, one recruiter/employer wrote:

> My biggest complaint... is when people would call to ask about a job they saw on The Ladders, or to follow up on an application they'd made. I'd have to explain to them that we didn't list on The Ladders, that the job had been closed for months (in a few cases, for over a year), and that the job paid well less than six figures.
>
> The best part? They'd get mad at me, claiming false representation – 'why would you tell The Ladders that this job pays more than six figures?"
>
> I'd have to explain – again – that The Ladders never called us to verify, that we didn't list the jobs there, etc.[5]

Another wrote:

> ...candidates were mad at us for posting the jobs on theLadders and them not being $100K. We had to explain that we didn't post but theLadders scraped them from our website. They too were very displeased to hear that.[6]

---

[5] Martin Burns, http://fistfuloftalent.com/2011/02/theladders-more-cirque-du-soleil-than-an-evil-empire.html

[6] Deane Osner, http://www.ere.net/2011/02/15/is-the-ladders-a-scam/

Another wrote:

> I just had an "episode" with Ladders. I was recruiting for a Plant Manager in Texas (a relocation)... when I spotted the same job on Ladders for 100K plus/Bonus etc. None of this was true. I called my client and told him about it and he assured me the salary he gave me was correct and there was no bonus etc.[7]

An employer wrote that after specifically discussing job posts, and notifying TheLadders that her positions did not meet its minimum salary requirements, TheLadders posted the jobs anyway:

> Imagine my surprise when I did a quick internet search to find out who had been scraping my jobs, and there they were on the Ladders. I called the guy back and he did get his 'scrapers' to take the jobs down, and he also had a note put out to all not to put any jobs from our company on without passing it by him, but I found the same thing happened again a few weeks later.[8]

Perhaps most incredibly, another recruiter wrote:

> In Nov. and Dec. [2010] I received two resumes forwarded from the Ladders in response to a job we had posted in 2007. I sent notes to both letting them know that the job was over three years out of date. One of them wrote back and said he had never used the Ladders before and had no idea why or how his resume had been sent to us.[9]

24.    When pressed with complaints from premium members, TheLadders admitted that its jobs were posted without authorization from employers and without any sort of verification that the jobs meet its criteria of "only real, open $100k+ jobs." One customer named Alishia recorded her online chat with a customer service representative from TheLadders named Andy which illustrates the misrepresentations and misconduct alleged herein:

> **Alishia:** Hi Andy
> **Alishia:** I have a problem
> **Andy:** Sorry to hear that Alisha, how can I help?
> **Alishia:** I found this job on your website: [redacted]
> **Alishia:** and after spending time researching the company, writing a letter and resume

---

[7] Lynda Hallock, http://corcodilos.com/blog/3219/theladders-how-the-scam-works-2

[8] Claire Peat, http://www.ere.net/2011/02/15/is-the-ladders-a-scam/

[9] Sandra Mccart, http://corcodilos.com/blog/3219/theladders-how-the-scam-works-2

**Alishia:** when I got a call from the hiring manager
**Alishia:** he tells me this position pays $50K
**Alishia:** and when
**Alishia:** I asked him why he posted the position on The Ladders
**Alishia:** he said he DID NOT POST IT on TheLadders
**Alishia:** so
**Alishia:** I am very concerned
**Alishia:** about the time and effort and money I am spending
**Alishia:** using your site
**Andy:** Okay Alishia, I can definitely understand why you're concerned about this and I'd be glad to explain.
**Alishia:** if you are pulling ads from a third party
**Alishia:** without verifying the salary range
**Alishia:** ok - please explain
**Andy:** ...Many of the positions on our site are linked directly to from external job boards. Since we don't have a direct way of knowing the pay range of each of these positions, we make an estimate...
**Alishia:** omg... so you mean that you are taking educated guesses on what these positions pay??? do you think that is what users think who pay $30 per month to use your product - that you are paying for good guesses as to what a position MAY pay???
...
**Alishia:** i understand pulling from third parties but don't you verify these postings by calling the company or something?
**Andy:** The fact is Alishia that very few companies are willing to release this information if they havent chosen to do so on the posting itself.
**Alishia:** Well, Andy, I mean...it's YOUR tagline: The most $100k+ jobs, all in one easy-to-search site. Our mission has always been to make your job search as quick and easy as possible. We work hard to bring you the best $100k+ jobs around — over 25,000 a month![10]

25.     Mark Cenedella, Chief Operating Officer of TheLadders, also admitted to scraping jobs from other websites without authorization after giving a speech in Los Angeles at a *Career & Networking Symposium* on June 26, 2010.  There, Cenedella was quoted as saying that "50% [of jobs on TheLadders are from] employers and recruiters, and the rest [are] culled from the Web."

### *TheLadders' "Expert Resume Critique" Scam*

26.     TheLadders also promised an "expert resume critique" for its premium members.

---

[10] http://www.asktheheadhunter.com/newsletter/OE20090120.htm

27.    However, TheLadders did not actually provide a bona fide resume critique for each premium member.  TheLadders did not even read the contents of the resumes submitted to it.  Instead of providing bona fide resume critiques as promised, TheLadders sent its members a form letter that failed to provide any resume criticism responsive to members' individual resumes.  The sole purpose of the form letter was to up-sell members into useless paid resume re-writing services for applying to the non-existent $100k+ positions on TheLadders' job board.

28.    TheLadders charged members $300-$850 for a resume rewrite.

29.    By sending out form letters concerning a sales pitch that failed to provide any "expert resume critiques," TheLadders breached its contract and common law covenants with its premium members who did not receive what they bargained for.

30.    In May of 2009, a career management blog called Jibber-Jobber posted a copy of a form letter response to a resume submitted to TheLadders.  Within a couple months, the blog received dozens of comments that others had "received the very same form letter from TheLadders," which did not contain a bona fide resume critique as promised.[11]

31.    TheLadders even sent form letters in response to resumes their own writers had drafted.  In her blog, Susan Geary, a professional resume writer *who had previously provided resume rewriting services for TheLadders* when they first launched, commented that:

> It turns out that the Ladders is ripping to shreds, documents written by certified resume writers. I got mine ripped apart about 6 months ago when one of my very loyal clients sent it in just to see what someone else thought. He was kind enough to send the canned form letter to me… The resume writers from our egroup forum were comparing notes. *It turns out we all got the same critique* from sales people who make a healthy commission on every sale. Some of my colleagues have been in business for 20 years, have authored books, and won numerous awards. These harsh critiques were unwarranted.[12]

---

[11] http://www.jibberjobber.com/blog/2009/05/28/the-ladders-scam/#comments

[12] http://firstrateresumes.net/resume-critiques-and-the-ladders-com/ (emphasis added)

*Deceptive Business Practices and Misrepresentations in Advertisements and Media*

32.    TheLadders knowingly broadcasts misrepresentations about its service through widely publicized advertisements in print, on the Internet, and on television commercials. For example, several of its false and misleading commercials aired during the 2009 Super Bowl, which had an estimated television audience in the United States of 98.7 million viewers.[13]

33.    Advertisements on the Internet and television promoted TheLadders by putting down "ordinary job search sites" which "let everyone play, so nobody wins." TheLadders, however, was promoted as a "premium job site created exclusively for $100k+ people looking for $100k+ jobs" which "carefully screen[s] and filter[s] each job and each applicant," making it easier for the "top people" to find the "top opportunities." But this is false. TheLadders did not screen and filter each job and the purported $100k+ opportunities were bogus.



---

[13] http://sportsillustrated.cnn.com/2009/football/nfl/super-bowl/02/03/ratings.ap/index.html



34.    One television commercial featured workers in seductive poses at their offices. The voice in the background read: "Join theladders.com. We don't just post the $100k+ jobs. We give you the tools and guidance you need to be irresistible." The advertisement emphasized the availability of "Hand-screened $100k+ jobs." But TheLadders did not hand-screen its posts, and the purported $100k+ opportunities were false.





35.    Another television commercial depicted soldiers chasing after a throng of fleeing office chairs. The soldiers then shot and captured one specific chair. The voice in the background read: "If you think about it, this is what makes TheLadders different from other job search sites. We only want the big jobs. Welcome to TheLadders, a premium job site for *only* $100k+ jobs and only $100k+ talent." The advertisement emphasized that TheLadders was superior to other job search sites because it contained "only $100k+ jobs." But TheLadders did not contain only $100k+ jobs. In fact, TheLadders made no effort to determine whether positions were still open or how much they paid, and the purported $100k+ opportunities were bogus.



## FACTS CONCERNING THE CLASS REPRESENTATIVE

36.    Plaintiff Barbara Ward subscribed to a premium membership with TheLadders in or around January, 2011.

37.    Prior to signing up for TheLadders, Plaintiff Ward earned in excess of $100,000 a year from her job.

38.    Plaintiff Ward purchased a premium subscription with TheLadders for approximately $180 and entered into the Agreement in reliance on its representations in the Agreement and incorporated therein on its website, advertisements, and in messages from its Chief Operating Officer, Mark Cenedella, including that (a) TheLadders "hand screens every job post and recruiter so you only see real, open $100k+ jobs in your area," (b) "TheLadders reviews each job listing found online or submitted by recruiters and employers before it's posted to ensure it meets the criteria of a $100k+ position," (c) TheLadders provides "hand-selected and pre-screened jobs that are $100k+," (d) TheLadders' "experts pre-screen all jobs so they're always $100k+," (e) TheLadders "carefully screen[s] and filter[s] each job and each applicant...making it easier for the top people to find the top opportunities," (f) TheLadders is a "premium job site for only $100k+ jobs and only $100k+ talent," and (g) TheLadders provides "expert resume critiques" for its premium members (the "Misrepresentations"). Prior to signing up for TheLadders' service, Plaintiff Ward carefully reviewed the contents of www.theladders.com and the Agreement, including the Misrepresentations. The Misrepresentations were part of the benefit of the bargain and were material to her. Plaintiff Ward understood the Misrepresentations to mean that TheLadders actively screened all of its job postings, that all jobs listed on the site were current, authorized, and paid only $100k+, and that she would receive a bona fide expert resume critique. Plaintiff Ward would not have signed up for TheLadders had she known that the Misrepresentations were false and misleading.

39.    As a result of Defendant's deceptive, misleading, and unfair practices described herein, Plaintiff's expectations were not met. In fact, Plaintiff applied for numerous purported $100k+ jobs, and failed to receive responses for all but two of her submissions because the

14

purported opportunities were stale. And as for the other two submissions, the offered pay was substantially less than $100k+.

40.     Plaintiff Ward discovered after signing up that many of the jobs posted on TheLadders were no longer available and/or did not pay $100k+.

41.     Plaintiff Ward also submitted her resume to TheLadders, but never received a bona fide "expert resume critique" as promised.

## CLASS REPRESENTATION ALLEGATIONS

42.     Plaintiff seeks to represent a class defined as all persons, nationwide, who were premium members on www.theladders.com from March 11, 2007 through August 31, 2011 (hereafter, the "Class"). Plaintiff also seeks to represent a subclass defined as all Class members who resided in Arkansas while they subscribed to TheLadders' premium members' service (the "Arkansas Subclass"). Excluded from the Class and Arkansas Subclass are governmental entities, TheLadders, TheLadders' affiliates, parents, subsidiaries, employees, officers, directors, and co-conspirators. Also excluded is any judicial offer presiding over this matter and the members of their immediate families and judicial staff.

43.     Members of the Class and Arkansas Subclass are so numerous that their individual joinder herein is impracticable. On information and belief, based on TheLadders' subscriber estimates, members of the Class number in excess of one million persons. The precise number of Class members and their identities are unknown to Plaintiff at this time but will be determined through discovery of TheLadders' billing records. Class members may be notified of the pendency of this action by mail, email and/or publication.

44.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

> a. Whether TheLadders falsely represented that it pre-screened all jobs to ensure that its members only see "real, open $100k+ jobs."

b. Whether TheLadders scraped jobs from other sources on the Internet without authorization instead of hand-selecting them as promised.

c. Whether TheLadders breached its contract with members by selling them access to purported "$100k+" job listings that (1) didn't exist, (2) didn't pay $100k+, and/or (3) were not authorized for posting on TheLadders by the employers.

d. Whether TheLadders improperly billed Plaintiff and members of the Class for services that it promised but did not provide.

e. Whether TheLadders breached its implied covenant of good faith and fair dealing by not providing services its members reasonably expected under the terms of its Agreement.

f. Whether TheLadders sent its members form letters instead of "expert resume critiques."

g. Whether TheLadders violated the Arkansas Deceptive Trade Practices Act.

h. Whether TheLadders was unjustly enriched by its misconduct.

45. Plaintiff's claims are typical of the claims of the proposed Class and Arkansas Subclass. Each class member was subjected to the same illegal conduct, was harmed in the same way and has claims for relief under the same legal theories.

46. Plaintiff is an adequate representative of the Class and Arkansas Subclass because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of Class members and Arkansas Subclass members will be fairly and adequately protected by Plaintiff and her counsel.

47.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class and Arkansas Subclass members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I

### (Breach Of Contract)

48.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

49.     Plaintiff brings this COUNT I individually and on behalf of the members of the proposed Class against defendant TheLadders.

50.     TheLadders posted on its website the Agreement to provide services to prospective subscribers. On its website and in the Agreement, TheLadders falsely represented and promised that "TheLadders reviews each job listing found online or submitted by recruiters and employers before it's posted to ensure it meets the criteria of a $100k+ position," when, in fact, the service failed to conduct any review and was merely a scheme to defraud Plaintiff and others members of the Class out of the subscription fees it collected.

51.     The scheme was effectuated by TheLadders falsely advertising that all jobs posted on the site were "pre-screened" and "hand-selected" so consumers only "see real, open $100k+ jobs." Instead of vetting the jobs which appeared on its site, TheLadders scraped the Internet for job postings that it was not authorized to list, and knew nothing about. By doing so, TheLadders

sold access to purported $100k+ job listings that (1) did not exist, (2) did not pay $100k+, and/or (3) were not authorized for posting on TheLadders by the employers.

52.     Plaintiff and others members of the Class were misled to enter into the Agreement, which falsely promised "a premium job site for only $100k+ jobs and only $100k+ talent." The Agreement was a legal contract.

53.     Plaintiff and the members of the Class, as parties to the Agreement, were promised that the Agreement was intended to provide each paying subscriber with access to legitimate, current, and authorized job listings which paid in excess of $100,000 a year in exchange for the payment of monthly subscription fees. But this promise was false.

54.     Plaintiff and Class members have performed all of their duties and obligations under the Agreement, except those excused by TheLadders' nonperformance.

55.     TheLadders breached the aforementioned contract by depriving Plaintiff and members of the Class of the benefit of their bargain by intentionally, purposefully and/or negligently providing and presenting, through its website, unauthorized job posts for positions which no longer existed and/or paid less than $100,000 a year. TheLadders further breached its Agreement by failing to take any reasonable steps to remove such job listings, by failing to properly take steps to police its site, and otherwise by failing to ensure the integrity and legitimacy of its services. Additionally, TheLadders breached its Agreement by providing form letters instead of "expert resume critiques" to its members.

56.     As a direct and proximate result of TheLadders' breach of contract, Plaintiff and others similarly situated have suffered damages in terms of subscription fees paid.

## COUNT II

### (Common Count For Money Had And Received)

57.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

58.     This COUNT II is brought against defendant TheLadders by Plaintiff individually and on behalf of the Class.

59.    TheLadders has improperly billed Plaintiff and Class members for services that it promised but did not provide.

60.    As a proximate result of these improper billings, TheLadders has received monies from Plaintiff and Class members, and TheLadders has no right thereto.

61.    TheLadders has benefited from the receipt of monies from Plaintiff and class members.

62.    The monies received by TheLadders from these improper billings belong to Plaintiff and Class members and under the principals of equity and good conscience must be returned to them.

63.    WHEREFORE, Plaintiff seeks an order requiring TheLadders to:

(a) Pay damages according to proof;

(b) Make full restitution of all monies wrongfully obtained; and

(c) Disgorge all ill-gotten revenues and/or profits.

## COUNT III

### (Breach Of Implied Covenant Of Good Faith And Fair Dealing)

64.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

65.    Plaintiff brings this COUNT III individually and on behalf of the members of the proposed Class against defendant TheLadders.

66.    The Agreement between TheLadders, Plaintiff, and other members of the Class imposed on each party a duty of good faith and fair dealing in the performance of the Agreement.

67.    Plaintiff and other members of the Class were reasonably justified in understanding that the jobs posted on TheLadders pursuant to the agreement were done so with the consent and authorization of their respective employers or recruiters, that TheLadders specifically confirmed with the employers that the jobs actually paid $100k+, that TheLadders specifically confirmed with the employers that the positions were still available, and that the

promised "expert resume critique" was uniquely responsive to the resumes submitted, rather than being a form letter.

68.    TheLadders breached its duty of good faith and fair dealing by intentionally, purposefully and/or negligently providing and presenting, through its website, unauthorized job posts for positions which no longer existed and did not pay $100,000 a year.  TheLadders further breached its duty of good faith and fair dealing by failing to take any reasonable steps to remove such job listings, by failing to properly take steps to police its site and otherwise by failing to ensure the integrity and legitimacy of its services.   Additionally, TheLadders breached its duty of good faith and fair dealing by providing form letters instead of "expert resume critiques" promised to its members.

69.    The conduct of TheLadders was conscious and deliberate, and unfairly frustrated the agreed upon purpose of the parties in carrying out the Agreement.

70.    The conduct of TheLadders disappointed the reasonable expectations of Plaintiff and other members of the Class, thereby depriving them of the benefits of the Agreement.

71.    As a direct and proximate result of TheLadders' breach of good faith and fair dealing, Plaintiff and others similarly situated have suffered damages in terms of subscription fees paid.

## COUNT IV

### Deceptive and Unconscionable Trade Practices In Violation Of Arkansas' Deceptive Trade Practice Act ("ADTPA"), Arkansas Code §§ 4-88-101 *et seq.*

72.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

73.    This COUNT IV is brought against TheLadders by Plaintiff individually and on behalf of the Arkansas Subclass.

74.    TheLadders knew that it scraped job postings from the internet without authorization, and that many of the jobs on theladders.com either did not exist or did not pay $100k+.

75.     Despite this, TheLadders knowingly made false representations in various advertisements and on its website that it exclusively provided "pre-screened" and "hand-selected" jobs that paid $100k+.

76.     TheLadders violated A.C.A. § 4-88-107(a)(i) and (iii) by representing in its advertisements and commercials that it provided members with "real, open $100k+ jobs" when it knew that many of its jobs did not exist and/or did not pay $100k+. TheLadders advertised that its experts screened and filtered each job posting, and that the website was "the premium job site for only $100k+ jobs, and only $100k+ people," with the intent to not provide this service as advertised.

77.     TheLadders violated A.C.A. § 4-88-107(a)(iii) by employing bait and switch advertising in representing that it was "the premium job site for only $100k+ jobs, and only $100k+ people," to bait people seeking such a service, but merely provided them with unauthorized jobs that were scraped from the Internet about which TheLadders had no knowledge, by giving access to basic members to see jobs that did not exist and/or did not pay $100k+ in order to induce them into paying for premium memberships, and by advertising "expert resume critiques" and instead providing form letters which were little more than disguised sales pitches.

78.     TheLadders violated A.C.A. § 4-88-108 by using deception, fraud, and false pretenses in connection with the advertisement of its subscription service, and by concealing, suppressing, and omitting the material fact that at least half of its jobs are unauthorized scrapings from the Internet.

## COUNT V

## (Unjust Enrichment/Common Law Restitution)

79.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

80.     Plaintiff brings this COUNT V individually and on behalf of the members of the proposed Class against defendant TheLadders.

81.     TheLadders received benefits from, and at the expense of Plaintiff and members of the Class, who were improperly billed for services that TheLadders promised but did not provide.

82.     It would be unjust for TheLadders to retain those benefits as the expense of Plaintiff and other Class members.

83.     WHEREFORE, Plaintiff seeks an order requiring TheLadders to:

    (a)    pay damages according to proof;

    (b)    make full restitution of all monies wrongfully obtained; and

    (c)    disgorge all ill-gotten revenues and/or profits.

## RELIEF DEMANDED

84.     WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against TheLadders, as follows:

    A.    For an order certifying the Class and Arkansas Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Arkansas Subclass, and Plaintiff's attorneys as Class Counsel to represent the Class and Arkansas Subclass members;

    B.    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

    C.    For compensatory, consequential, and punitive damages in amounts to be determined by the Court and/or jury;

    D.    For prejudgment interest on all amounts awarded;

    E.    For an order of restitution and all other forms of equitable monetary relief;

    F.    For injunctive relief as pleaded or as the Court may deem proper; and

    G.    For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: March 11, 2013

Respectfully submitted,

BURSOR & FISHER, P.A.

By: _____
        Joseph I. Marchese

Scott A. Bursor (SB1141)
Joseph I. Marchese (JM1976)
Neal J. Deckant (ND1984)
888 Seventh Ave
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
            jmarchese@bursor.com
            ndeckant@bursor.com

*Attorneys for Plaintiff*