**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————————————

**Barbara Ward, et al.**

                    **Plaintiffs,**            **13 Civ. 1605 (JGK)**

          **- v.-**                            <u>**OPINION AND ORDER**</u>

**TheLadders.com, Inc.,**

                    **Defendant.**
————————————————————————————

**JOHN G. KOELTL, District Judge:**

     This action arises out of the operation and use of a job-
matching website, TheLadders.com.  The plaintiffs, Barbara Ward,
Joseph Garcia, Robin Lynn, Timothy Morris, David Reading, and
Philip Wilton, who are former premium-paying users of the
website ("premium members"), brought this purported class action
against the defendant, TheLadders.com, Inc. ("TheLadders").  The
plaintiffs allege that the defendant made false promises and
representations regarding, among other things, the quality,
specifications, and availability of job postings on the website,
and that the defendants induced subscribers to purchase resume
rewriting services through false representations.

     The plaintiffs allege claims for breach of contract, breach
of implied covenant of good faith and fair dealing, rescission
of contract, money had and received, common-law fraud, unjust
enrichment, and violations of the New York General Business Law
§ 349, the Washington Consumer Protection Act, and the

California Unfair Competition Law.  The plaintiffs assert subject-matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because: there are more than one hundred class members; the aggregate amount in controversy exceeds five million dollars; and there is partial diversity of citizenship in that the defendant is a citizen of New York and at least one plaintiff is a citizen of a different state.  The defendant now moves to dismiss the Second Amended Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons explained below, the motion is **granted in part** and **denied in part**.

I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007); Arista Records LLC v. Lime Grp. LLC, 532 F. Supp. 2d 556, 566 (S.D.N.Y. 2007).  The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient."  Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).  The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief

2

that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." <u>Id.</u>

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. <u>See</u> <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002).


**II.**

The Court accepts the following allegations in the plaintiffs' Second Amended Complaint as true for purposes of this motion to dismiss. Defendant TheLadders, a Delaware corporation with its principal place of business in New York, operated a job-matching website, TheLadders.com (the "website"), which charged a premium subscription fee for members to access

job postings on the website.  (2d Am. Compl. ("SAC") ¶¶ 2, 16.)
The website provided different subscription options to the
members.  The "free basic" subscription allowed members to
review job listings but did not allow the members to apply for
the positions.  (SAC ¶ 33.)  The "premium" membership, at a cost
of $30 per month or $180 per year, allowed members to apply for
the positions.  (SAC ¶ 33.)  The named plaintiffs were premium
members of the website at various times from 2003 to around
December 2010.  (SAC ¶¶ 64, 74, 88, 98, 105, 110.)

     In order to access the website, members were required to
agree to the website's "Terms of Use," which were subject to
revision from time to time.  (SAC ¶ 21; see also Addonizio Decl.
Exs. 3, 4, 5, 6, and 7.)  In addition to setting forth various
duties and obligations, the Terms of Use provided, at all times
relevant to this action, that other sections or pages on the
website "may contain separate terms and conditions" and that
these terms and conditions were "in addition to" the terms and
conditions in the Terms of Use.  (SAC ¶ 22.)  The Terms of Use
further provided that those "additional terms and conditions"
would govern in the event of a conflict with the Terms of Use.
(SAC ¶ 22.)  Moreover, the Terms of Use as revised on June 30,
2010 also stated under the "About Our Site" section that
TheLadders "reviews each job listing found online or submitted
by recruiters and employers before it's posted to ensure it

4

meets the criteria of a $100K+ position." (Addonizio Decl. Ex. 3 ("June 2010 Terms of Use") at 1.)[1]

The website contained representations about the nature and quality of the jobs as well as the services provided. For example, the website displayed words and slogans representing the website to be "a premium job site for only $100K+ jobs" where "[e]xperts pre-screen all jobs so they're always 100K+" and members would "find hand-selected and pre-screened jobs that are $100K+." (SAC ¶¶ 20, 24, 25). Each of the named plaintiffs allegedly relied on such representations in signing up for the premium membership. (SAC ¶¶ 66, 76, 90, 100, 107, 112.) TheLadders made similar representations in the TV commercials, advertising the website as a "premium job site for only $100K+ jobs and only $100K+ talent." (SAC ¶¶ 42, 43.)

However, the plaintiffs allege that the website simply "scraped" job postings from other websites without authorization and that TheLadders did not review the job listings to ensure that each job listing was a "$100K+" job or that the jobs posted were still open. (SAC ¶¶ 31, 32.) As a result, many of the job listings, including some for which the plaintiffs applied or inquired into, were not open or, even if open, would pay

---

[1] In deciding this motion, the Court may rely on the Terms of Use and the resume critique letters attached to the defendant's Memorandum of Law, because such documents are referred to in the Second Amended Complaint and are relied on by the plaintiffs in bringing the action. See Chambers, 282 F.3d at 153.

5

substantially less than $100,000 a year. (SAC ¶¶ 38, 108-09, 113-15.)

In addition, TheLadders allegedly engaged in deceptive conduct with respect to the website's "expert resume critique" service. TheLadders provided to its premium members what it purported to be an "expert resume critique" service. (SAC ¶ 48.) However, TheLadders allegedly did not actually provide bona fide resume critiques when premium members submitted their resumes for review. (SAC ¶ 49.) Instead, the "expert resume critique" service was allegedly a scheme through which TheLadders attempted to sell its resume rewriting service. (SAC ¶ 50.) The purported "experts" who issued the "expert resume critiques" were salespeople with no qualification in the field of resume consulting. (SAC ¶ 51.) The resume critique letters were form letters drafted by salespeople from a crib-sheet regardless of whether the submitted resumes were already well-written, so that members would be induced to purchase resume rewriting service. (SAC ¶¶ 53-55.) Salespeople would earn $10 in commission for each person to whom they sold the resume rewriting service. (SAC ¶ 52.) Allegedly misled by the resume critiques and not knowing that the critiques were form letters created by salespeople, plaintiffs Garcia, Lynn, and Morris purchased the resume rewriting service from TheLadders at costs ranging from $495 to $1,820. (SAC ¶¶ 69-70, 83-84, 92-93.)

The plaintiffs brought this action for breach of contract (Count I), rescission of contract (Count II), breach of implied covenant of good faith and fair dealing (Count III), money had and received (Count IV), common-law fraud (Count V), violations of New York's General Business Law (GBL) § 349 (Count VI), unjust enrichment (Count VII), and violations of consumer protection laws of Washington and California, respectively (Count VIII and IX).

## III.

The plaintiffs' first claim is for breach of contract. Under New York law, the elements of a cause of action for breach of contract are: "(1) the existence of a contract, (2) the plaintiff's performance under the contract, (3) the defendant's breach of the contract, and (4) resulting damages." Palmetto Partners, L.P. v. AJW Qualified Partners, LLC, 921 N.Y.S.2d 260, 264 (App. Div. 2011). "Generally, a party alleging a breach of contract must demonstrate the existence of a contract reflecting the terms and conditions of their purported agreement." Mandarin Trading Ltd. v. Wildenstein, 944 N.E.2d 1104, 1110 (N.Y. 2011) (internal quotation marks and citation omitted).

The parties dispute what, if any, terms and conditions the defendant breached by allegedly failing to provide job postings and services meeting the plaintiffs' expectations.

**A.**

First, the plaintiffs rely on the following language under the "About Our Site" section of the June 2010 Terms of Use: "TheLadders reviews each job listing found online or submitted by recruiters and employers before it's posted to ensure it meets the criteria of a $100K+ position." (June 2010 Terms of Use at 1.)  The plaintiffs argue that the defendant breached this contractual provision because the defendant failed to review the job listings to ensure that they actually paid $100,000 or more.  (SAC ¶ 31.)  The defendant argues that the plaintiffs have no standing to assert a claim based on this language because all of them became members of the website prior to the insertion of this language on June 30, 2010.  The plaintiffs argue that plaintiff Morris has standing to rely on this language because he <u>remained</u> a member until December 2010.

With the exception of Morris, none of the named plaintiffs became or remained members of the website on or after June 30, 2010, when this language was inserted.  Thus, plaintiffs Garcia, Lynn, Reading, Ward, and Wilton cannot rely on this language to bring a breach of contract claim, because they were not parties to a contract containing this language.  See <u>DeRaffele v. 210-220-230 Owners Corp.</u>, 823 N.Y.S.2d 202, 203 (App. Div. 2006) ("[T]he plaintiff was not a party to that agreement so that he could enforce it . . . .").

With respect to plaintiff Morris, the defendant argues that Morris agreed only to the Terms of Use as of March 2010 when he signed up and thus also cannot rely on the language inserted in June 2010.  This argument is without merit.  "[T]here is no question that a contract may be modified if the contract provides for its modification." Janover v. Bernan Foods, Inc., 901 F. Supp. 695, 700 (S.D.N.Y. 1995); see also Nimphius v. Greyhound Corp., 165 N.Y.S.2d 996, 998 (Sup. Ct. 1957) (finding that a subsequent contract superseded a prior contract where the prior contract "specifically provide[d] for change or modification").

The Terms of Use in this case explicitly provided for subsequent modifications.  For example, the version of the Terms of Use dated November 2009, which was in place at some point in time prior to the June 2010 Terms of Use, provided that: "TheLadders reserves the right, at any time, to modify, alter, or update . . . these Terms of Use . . . .  If You choose to continue using the Website, You agree that by doing so You will be deemed to accept the new Terms of Use . . . ." (Addonizio Decl. Ex. 6 ("Nov. 2009 Terms of Use") at 1.)  All other versions of the Terms of Use contained similar language. (E.g. June 2010 Terms of Use at 1; Addonizio Decl. Ex. 5 ("Aug. 2008 Terms of Use") at 1.)  Therefore, for purposes of this motion, there is a plausible inference that plaintiff Morris clearly

assented to the June 2010 Terms of Use by continuing his use of the website.  See Bensen v. Am. Ultramar Ltd., No. 92 Civ. 4420, 1997 WL 66780, at *7 (S.D.N.Y. Feb. 14, 1997) ("To prove modification of a contract, all the elements of contract formation must be shown, including mutual assent, which may be proven circumstantially by the conduct of the parties . . . ."); cf. Wasserstrom v. Interstate Litho Corp., 495 N.Y.S.2d 217, 219 (App. Div. 1985) (holding that, even if a new written agreement is never executed, a new contract may be created "when the parties clearly demonstrate their intention to create a new contract in substitution of another").  Accordingly, Morris can properly rely on the June 2010 Terms of Use because he was a party to that contract.[2]

The defendant next argues that the language inserted in June 2010 was not an express promise but merely a general description of services.  While certain introductory phrases in contracts have been held to be non-determinative of the parties' rights and obligations, see, e.g. Andersen ex rel. Andersen, Weinroth & Co., L.P. v. Weinroth, 849 N.Y.S.2d 210, 219 (App. Div. 2007); cf. Robinson v. Match.com, L.L.C., No. 10 Civ. 2651, 2012 WL 3263992, at *12 (N.D. Tex. Aug. 10, 2012), the

---

[2] Indeed, the defendant does not and cannot plausibly argue that Morris was not bound by the June 2010 Terms of Use while Morris used the website after June 30, 2010, when the June 2010 Terms of Use came into force.

contractual language in those cases was far more general than
the language in the present case.  See Weinroth, 849 N.Y.S.2d at
219 (holding introductory language expressing the company's
"desire to recognize the value to the Company of past and
present services" to be non-substantive (emphasis omitted));
Robinson, 2012 WL 3263992, at *12 (classifying language
describing a website as "the service for single adults to meet
each other online" as merely "introductory" language).[3]

Here, by contrast, the contractual language described
specific actions to be taken by the defendant, namely, that
"TheLadders reviews each job listing . . . before it's posted to
ensure it meets the criteria of a $100K+ position."  (June 2010
Terms of Use at 1.)  Thus, even though the language appeared
under the "About Our Site" section, there may be, at the very
least, a reasonable disagreement as to whether the language
should be construed as "merely introductory" or as creating
specific contractual obligations, and this disagreement cannot

---

[3] The defendant's heavy reliance on Robinson is misplaced
additionally because the website in that case made no
representation that it would perform the actions that it
allegedly failed to perform.  The only contractual language in
that case concerning the website's actions provided that the
website "reserve[d] the right" to investigate and terminate a
user's membership in case of user misconduct.  Robinson, 2012 WL
3263992, at *8, *9 (emphasis omitted).  As the Robinson court
explained, "the Agreement does not require Match.com to
undertake the actions alleged but instead merely provides that
Match.com may undertake such actions in its sole discretion and
judgment."  Id. at *10.

be resolved on a motion to dismiss.  See Chase Bank USA, N.A. v.
Unifund Portfolio A LLC, No. 09 Civ. 9795, 2010 WL 3565169, at
*5 (S.D.N.Y. Sept. 13, 2010) (On motion to dismiss for failure
to state a claim, "a court may not choose between two differing
reasonable interpretations of an ambiguous contract unless only
one reasonable construction exists as a matter of law.").[4]

     The defendant also contends that the Limitation of
Liability and Disclaimer of Warranties sections in the Terms of
Use preclude a claim for breach of contract.  The Limitation of
Liability section in the June 2010 Terms of Use provided that
"TheLadders has no control over User Content, quality, safety,
or legality of jobs or resumes posted and makes no
representations about any jobs, resumes or User Content."  (June
2010 Terms of Use at 2.)  Similarly, the Disclaimer of

---

[4] The same reasoning applies to the defendant's contention that
to "review [and] ensure [that a job listing] meets the criteria
of a $100K+ position" was not a promise that each job posting
would be an actual and open position and would pay more than
$100,000 per year.  The language was at least ambiguous: the
disagreement between the parties is essentially whether a job
that "meets the criteria of a $100K+ position" meant a job
opening that paid more $100,000 per year, as the plaintiffs
argue, or merely a job whose description suggested that it
belonged to the type that tends to pay more than $100,000.  It
is not necessary to resolve this ambiguity on this motion,
because the plaintiffs' allegation appears to be that the
defendant made no good-faith efforts at all to review or
prescreen the jobs.  (SAC ¶ 31.)  To the extent that any
ambiguity is implicated, the plaintiffs' construction prevails
for purposes of this motion.  See Subaru Distributors Corp. v.
Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005) (On a
motion to dismiss, a court "should resolve any contractual
ambiguities in favor of the plaintiff.").

Warranties clause provided, in relevant part, that

> ALL OF THE INFORMATION AND MATERIALS
> CONTAINED ON THE WEBSITE . . . ARE PROVIDED
> ON AN "AS IS" AND "AS AVAILABLE" BASIS,
> WITHOUT WARRANTY OF ANY KIND, EXPRESS OR
> IMPLIED . . . . THELADDERS MAKES NO
> REPRESENTATIONS OR WARRANTIES OF ANY KIND,
> EXPRESS OR IMPLIED, REGARDING . . . ANY OF
> THE SERVICES OR INFORMATION PROVIDED THEREIN
> IN TERMS OF ITS AVAILABILITY, ACCURACY,
> ADEQUACY, CORRECTNESS, PRECISION,
> TIMELINESS, COMPLETENESS, THOROUGHNESS,
> RELIABILITY OR OTHERWISE.
>
> . . .
>
> NO WARRANTY OF ANY KIND, WHETHER IMPLIED,
> EXPRESSED OR STATUTORY, INCLUDING
> . . . MERCHANTABILITY, FITNESS FOR A
> PARTICULAR PURPOSE AND FREEDOM FROM DEFECT
> . . . IS GIVEN IN CONJUNCTION WITH ANY OF
> THE INFORMATION, MATERIALS OR SERVICES
> PROVIDED BY THELADDERS. WE MAKE NO WARRANTY
> THAT THE WEBSITE OR THE SERVICES THEREON
> WILL MEET USERS' REQUIREMENTS.

(June 2010 Terms of Use at 1-2.)  The defendant argues that this

clause expressly disclaimed any representation regarding the

quality of job listings or services.

Under the doctrine of contra proferentem, "[i]t is a basic

principle of contract law that a written document is to be

construed against the party who prepared it where there are

contradictory provisions," Westfield Family Physicians, P.C. v.

Healthnow New York, Inc., 873 N.Y.S.2d 793, 795 (App. Div. 2009)

(collecting cases); accord Natt v. White Sands Condo., 943

N.Y.S.2d 231, 232 (App. Div. 2012), unless the other party also

negotiated the terms of the contract.  Westfield Family

Physicians, 873 N.Y.S.2d at 795; Am. Prop. Consultants, Ltd. v.
Zamias Servs., Inc., 741 N.Y.S.2d 852 (App. Div. 2002).  The
doctrine is particularly applicable in cases like this one, in
which a consumer agreed to a form contract that the consumer
neither drafted nor negotiated.  See A & Z Appliances, Inc. v.
Elec. Burglar Alarm Co., 455 N.Y.S.2d 674, 675 (App. Div. 1982);
see also Westchester Resco Co., L.P. v. New England Reinsurance
Corp., 818 F.2d 2, 3 (2d Cir. 1987) (per curiam).

     In this case, by disclaiming all control over the job
listings, the Limitation of Liability and Disclaimer of
Warranties clauses facially contradicted the earlier
representation that "TheLadders reviews each job listing
. . . to ensure it meets the criteria of a $100K+ position."
(June 2010 Terms of Use at 1.)  This case is unlike Robinson,
where the court held that the disclaimer over the contents on
the website barred the plaintiffs' claims because the defendant
website made no affirmative promise to take any actions with
respect to those contents.  Robinson, 2012 WL 3263992, at *10.
In this case, the defendant made an affirmative promise,
resulting in contradiction and inconsistency with the Limitation
of Liability and Disclaimer of Warranties clauses.  Although
parties may limit the scope of their rights and obligations by
contractual provisions, the resulting provisions must be
construed against the party who prepared them if the provisions

                               14

are apparently contradictory to or inconsistent with each other.
See Metro. W. Asset Mgmt., LLC v. Magnus Funding, Ltd., No. 03
Civ. 5539, 2004 WL 1444868, at *5 (S.D.N.Y. June 25, 2004).  To
what extent the Limitation of Liability and Disclaimer of
Warranties clauses modified or limited earlier promises is not
clear and cannot be resolved on this motion.  However, at the
very least, these clauses, when construed against the defendant,
cannot be read to negate completely an express promise made
earlier or to bar recovery of contractual damages for the
defendant's failure to perform that promise.[5]

     Finally, the defendant contends that the plaintiffs' claims
are barred by the "sole remedy" clause, which provides that
"THELADDERS EXPRESSLY DISCLAIMS LIABILITY FOR ERRORS OR
OMISSIONS IN THE INFORMATION AND MATERIALS CONTAINED THEREIN
. . . . IF YOU ARE DISSATISFIED WITH THE SITE, YOUR SOLE REMEDY

---

[5] The result here is the common-law equivalent of the principle
under the Uniform Commercial Code which holds that a general
disclaimer is ineffective if the disclaimer is inconsistent with
an "express undertaking" promised in the contract.  See Norwest
Fin. Leasing, Inc. v. Parish of St. Augustine, 674 N.Y.S.2d 312,
313 (App. Div. 1998) (citing N.Y. U.C.C. Law § 2-316(1))
(holding that "the general disclaimer of warranties was
inconsistent with the express undertaking to service and repair
the leased equipment, and is therefore ineffective"); Wintel
Serv. Corp. v. MSW Electronics Corp., 556 N.Y.S.2d 359, 360
(App. Div. 1990) (general disclaimer ineffective if inconsistent
with express warranty); see also N.Y. U.C.C. Law § 2-313, cmt. 1
(McKinney 2013) ("'Express' warranties rest on 'dickered'
aspects of the individual bargain, and go so clearly to the
essence of that bargain that words of disclaimer in a form are
repugnant to the basic dickered terms.")

IS TO DISCONTINUE USING THE SITE." (June 2010 Terms of Use at
2.) In response, the plaintiffs argue that the language applies
only to claims based on a breach of warranty because the
language appeared under the "Disclaimer of Warranties" section
along with other warranty disclaimers. The June 2010 Terms of
Use contained no language suggesting that the captions or
section headings should be disregarded in interpreting the
contract. Therefore, the heading must be considered and given
effect in contractual construction. See Int'l Multifoods Corp.
v. Commercial Union Ins. Co., 309 F.3d 76, 85 (2d Cir. 2002)
(holding, under New York law, that "[c]aptions are relevant to
contract interpretation"); see also Coley v. Cohen, 45 N.E.2d
913, 917 (N.Y. 1942) (construing contractual language in light
of the heading). Viewed in light of the heading, the Terms of
Use were at least ambiguous as to whether the contracting
parties intended that a "sole remedy" provision under the
"Disclaimer of Warranties" heading would bar a breach of
contract claim based on failure to perform a specific
contractual duty.

Moreover, the "Limitation of Liability" section provided
that

> THELADDERS' MAXIMUM TOTAL, AGGREGATE
> LIABILITY ARISING OUT OF OR IN CONNECTION
> WITH THE WEBSITE AND ANY INFORMATION OR
> SERVICES PROVIDED THEREIN, REGARDLESS OF THE
> CAUSE OF ACTION (WHETHER IN CONTRACT, TORT,

16

> BREACH OF WARRANTY OR OTHERWISE), WILL IN NO
> EVENT EXCEED THE TOTAL AMOUNT CUSTOMER HAS
> PAID TO THELADDERS WITHIN THE TWELVE (12)
> MONTH PERIOD PRECEDING THE DATE THE CLAIM
> FIRST AROSE.

(June 2010 Terms of Use at 2 (emphasis added).)  Thus, the contracting parties anticipated that monetary damages may arise from a variety of causes of actions including breach of contract.  Adopting the broad construction of the "sole remedy" provision advocated by the defendant would render this limitation of liability provision meaningless.  This would violate the fundamental contract law principle that a court's interpretation of a contract "should not read a contract so as to render any term, phrase, or provision meaningless or superfluous." Givati v. Air Techniques, Inc., 960 N.Y.S.2d 196, 198 (App. Div. 2013); accord Columbus Park Corp. v. Dep't of Hous. Pres. & Dev. of City of New York, 598 N.E.2d 702, 708 (N.Y. 1992); E. 41st St. Assocs. v. 18 E. 42nd St., L.P., 669 N.Y.S.2d 546, 548 (App. Div. 1998).  Therefore, with all ambiguities and contradictions resolved in favor of the plaintiff, the "sole remedy" provision cannot be construed as a matter of law to be an automatic bar to the plaintiff's claims.

Accordingly, plaintiff Morris has sufficiently pleaded a claim that the defendant breached the June 2010 Terms of Use. The defendant's motion to dismiss is **denied** with respect to plaintiff Morris's claim for breach of contract, to the extent

17

that such a claim is based on the June 2010 Terms of Use.

**B.**

In support of their breach of contract claim, the plaintiffs also rely on certain representations that appeared not in the Terms of Use but in other webpages on the website. For example, the website prominently displayed words and slogans proclaiming itself to be "a premium job site for only $100K+ jobs" where "[e]xperts pre-screen all jobs so they're always 100K+" and members would "find hand-selected and pre-screened jobs that are $100K+." (SAC ¶¶ 20, 24, 25.)

The defendant argues that these representations were mere advertisements and were not terms of any contract. In response, the plaintiffs argue that the Terms of Use at all times incorporated by reference these representations, making them part of the contract, because the "Additional Terms" section provided that other sections or pages on the Website "may contain separate terms and conditions" and that these terms and conditions were "in addition to" the terms and conditions in the Terms of Use. (SAC ¶¶ 22.)

It is well established under New York law that "[t]he doctrine of incorporation by reference requires that the paper to be incorporated into the written instrument by reference must be so described in the instrument that the paper may be

18

identified 'beyond all reasonable doubt.'" <u>Kenner v. Avis Rent</u>
<u>A Car Sys., Inc.</u>, 678 N.Y.S.2d 213, 214 (App. Div. 1998)
(quoting <u>In re Bd. of Comm'rs of Washington Park</u>, 7 Sickels (52
N.Y.) 131, 134 (1873)); <u>accord</u> <u>PaineWebber Inc. v. Bybyk</u>, 81
F.3d 1193, 1201 (2d Cir. 1996) (holding the same in affirming
grant of motion to dismiss); <u>Cornhusker Farms, Inc. v. Hunts</u>
<u>Point Co-op. Mkt., Inc.</u>, 769 N.Y.S.2d 228, 231 (App. Div. 2003).
Courts have emphasized that incorporation by reference must meet
an "exacting standard"; vague references to documents not
specifically identified do not suffice.  <u>Shark Info. Servs.</u>
<u>Corp. v. Crum & Forster Commercial Ins.</u>, 634 N.Y.S.2d 700, 701
(App. Div. 1995); <u>see also</u> <u>Ryan, Beck & Co., LLC. v. Fakih</u>, 268
F. Supp. 2d 210, 223 (E.D.N.Y. 2003).

     Here, the Additional Terms section merely stated that the
website "<u>may</u> contain other terms and conditions".  (SAC ¶ 22
(emphasis added).)  Without more, this language did not identify
what specific documents or writings were to be incorporated by
reference.  Although the plaintiffs concede that this language
could not possibly mean that all of the contents of the website
were incorporated by reference, they also did not proffer any
ground on which a clear and unambiguous incorporation by
reference can be established.  Therefore, the language was
nothing more than a "vague allusion to general classes of
documents" that may or may not be identifiable let alone be

incorporated, and was thus legally insufficient to effectuate a valid incorporation by reference.  See 4Connections LLC v. Optical Commc'ns Grp., Inc., 618 F. Supp. 2d 178, 183 (E.D.N.Y. 2009); see also Intesa Sanpaolo, S.p.A. v. Credit Agricole Corporate & Inv. Bank, No. 12 Civ. 2683, 2013 WL 4856199, at *4 (S.D.N.Y. Sept. 10, 2013) (granting motion to dismiss and holding that the non-specific phrase "other relevant agreement(s) setting forth the terms of the Reference Obligation" insufficient to constitute incorporation by reference); Sea Trade Co. Ltd. v. FleetBoston Fin. Corp., No. 03 Civ. 10254, 2007 WL 1288592, at *4 (S.D.N.Y. May 1, 2007) (holding that "the general reference . . . to the Bank's 'rules' and 'regulations' is insufficient as a matter of law to incorporate the Terms and Conditions").

Thus, the plaintiffs' assertion that the representations elsewhere on the website were part of the Terms of Use is deficient and without merit, and therefore, no claim for breach of contract can be based on these representations.  With the exception of plaintiff Morris, the plaintiffs have not proffered an alternative ground on which a breach of contract claim can be based.  Accordingly, the defendant's motion to dismiss the breach of contract claim is **granted** with respect to plaintiffs Garcia, Lynn, Reading, Ward, and Wilton.

**IV.**

The plaintiffs also bring a claim for breach of the implied
covenant of good faith and fair dealing.  Under New York law, to
state a claim for breach of the implied covenant, "the plaintiff
must allege facts which tend to show that the defendant sought
to prevent performance of the contract or to withhold its
benefits from the plaintiff."  Aventine Inv. Mgmt., Inc. v.
Canadian Imperial Bank of Commerce, 697 N.Y.S.2d 128, 130 (App.
Div. 1999).  A claim for breach of the implied covenant of good
faith is redundant if it "arose from the same facts and sought
identical damages" as the breach of contract claim.  Havell
Capital Enhanced Mun. Income Fund, L.P. v. Citibank, N.A., 923
N.Y.S.2d 479, 481 (App. Div. 2011).

The Court has held that plaintiff Morris has stated a claim
for breach of contract.  His claim for breach of the implied
covenant arose from the same alleged facts, namely, that the
defendant breached its promise to review and pre-screen each job
listing "to ensure it meets the criteria of a $100K+ position."
(June 2010 Terms of Use at 1.)  Therefore, plaintiff Morris's
claim for breach of the implied covenant is not based on any
facts that are separate and additional to those on which his
breach of contract claim is based.  Accordingly, his claim for
breach of the implied covenant is duplicative and must be
dismissed because "the conduct allegedly violating the implied

covenant is also the predicate for breach of covenant of an express provision of the underlying contract." Boart Longyear Ltd. v. Alliance Indus., Inc., 869 F. Supp. 2d 407, 419 (S.D.N.Y. 2012) (internal quotation marks and citation omitted).

With respect to the other plaintiffs, their breach of contract claim fails because they have failed to show that the Terms of Use in place while they were premium members contained the promise that the defendant allegedly breached. The implied covenant of good faith and fair dealing "cannot be used to create terms that do not exist in the writing." Vanlex Stores, Inc. v. BFP 300 Madison II, LLC, 887 N.Y.S.2d 576, 577 (App. Div. 2009); see also Madison Apparel Grp. Ltd. v. Hachette Filipacchi Presse, S.A., 861 N.Y.S.2d 296, 297 (App. Div. 2008); Yucyco, Ltd. v. Republic of Slovenia, No. 96 Civ. 4274, 1999 WL 169530, at *3 (S.D.N.Y. Mar. 25, 1999) ("An implied covenant of good faith cannot expand contract rights beyond the terms of the contract . . . ." (Internal quotation marks and citation omitted)). Therefore, these other plaintiffs have failed to show the existence of a contractual right to a benefit upon which their claim for breach of the implied covenant may be based; nor have they alleged any facts to show that the defendant prevented performance of the contract. See Aventine Inv. Mgmt., 697 N.Y.S.2d at 130. Hence, the breach of the implied covenant claim of these plaintiffs must also be

dismissed.

Accordingly, the defendant's motion to dismiss the plaintiffs' claim for breach of the implied covenant of good faith and fair dealing (Count III) is **granted** and the claim is **dismissed** in its entirety.


                                    **V.**

The plaintiffs have also brought claims for rescission of contract, money had and received, and unjust enrichment/restitution. In their papers, the plaintiffs have not addressed the claim for money had and received but have instead treated it as a claim for unjust enrichment/restitution. Therefore, the claim for money had and received is deemed abandoned, and only the claims for rescission and unjust enrichment/restitution are analyzed here.

Rescission is an "extraordinary" remedy and is not available when there is an adequate remedy at law.  Ellington v. Sony/ATV Music Publ'g LLC, 925 N.Y.S.2d 20, 22 (App. Div. 2011). "The effect of rescission is to declare the contract void from its inception and to put or restore the parties to status quo." Cnty. of Orange v. Grier, 817 N.Y.S.2d 146, 147 (App. Div. 2006) (internal quotation marks and citation omitted).  In this case, the plaintiffs concede that there is no longer any contract to rescind.  (Tr. of Oral Argument on Feb. 19, 2014 ("Tr.") at 19.)

                                    23

To the extent that the plaintiffs seek reimbursement for any fees paid while the contracts were in force, damages would be an adequate remedy if the plaintiffs had stated any claim for breach of contract.  Therefore, the rescission claim must be dismissed.

The plaintiffs' claim for unjust enrichment/restitution also sounds in equity.  "[E]quitable quasi-contractual relief for restitution and unjust enrichment is unavailable, where . . . the parties' obligations and potential liabilities are governed by the terms of their valid written agreement." DePinto v. Ashley Scott, Inc., 635 N.Y.S.2d 215, 216-17 (App. Div. 1995).  This is not a case in which the existence of a contract is in dispute.  Cf. Picture Patents, LLC v. Aeropostale, Inc., No. 07 Civ. 5567, 2009 WL 2569121, at *3 (S.D.N.Y. Aug. 19, 2009).  Despite the disagreements over the meanings of contractual terms, the plaintiffs do not dispute that their membership was governed by a valid, written agreement, namely, the Terms of Use.  Therefore, the plaintiffs' only remedy is the contractual damages to the extent that the defendant breached the Terms of Use.  See Sergeants Benev. Ass'n Annuity Fund v. Renck, 796 N.Y.S.2d 77, 87 (App. Div. 2005).

Accordingly, the defendant's motion to dismiss the claims for rescission, money had and received, and unjust enrichment/restitution (Counts II, IV, and VII) is **granted.**

24

VI.

Plaintiffs Garcia, Lynn, and Morris (the "resume plaintiffs") have asserted a claim for fraud based on the defendant's resume services.  Under New York law, to state a claim for fraud, "the complaint must contain allegations of a representation of material fact, falsity, scienter, reliance and injury."  Small v. Lorillard Tobacco Co., 720 N.E.2d 892, 898 (N.Y. 1999).[6]  Moreover, as an element of the claim, "[the] Plaintiff must show [that the] reliance was reasonable."  Stuart Silver Assocs., Inc. v. Baco Dev. Corp., 665 N.Y.S.2d 415, 417 (App. Div. 1997) (citation omitted); see also Vill. On Canon v. Bankers Trust Co., 920 F. Supp. 520, 530 (S.D.N.Y. 1996).

The resume plaintiffs allege that they purchased resume rewriting services from the defendant after being misled by the resume critiques that they received.  These critiques were provided to the plaintiffs as part of their premium membership benefits and were advertised as "expert resume critiques."  The plaintiffs allege that these critiques were not bona fide comments but were form letters containing incorrect or

---

[6] In addition, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  Because the plaintiffs' fraud claim is legally insufficient, it is unnecessary to analyze the sufficiency of the pleading under Rule 9(b).

unwarranted criticisms aimed at inducing the members to purchase the defendant's resume rewriting service.  (SAC ¶¶ 53-55.)  In their papers, the resume plaintiffs represent that they were not misled by the advertisements representing the critiques as "expert resume critiques," but by the critique letters, (Pls.' Mem. at 27 n.13, 28), which did not contain representations that the letters were drafted by resume experts.  (Addonizio Decl. Exs. 9, 10, 11.)

The defendant argues that the resume plaintiffs cannot demonstrate reasonable reliance on the critiques because such critiques were obviously sales pitches that consumers were free to accept or reject.  Under New York law, although reasonable reliance is often a "fact-intensive" question, DDJ Mgmt., LLC v. Rhone Grp. L.L.C., 931 N.E.2d 87, 91-92 (N.Y. 2010), it "is a condition which cannot be met where . . . a party has the means to discover the true nature of the transaction by the exercise of ordinary intelligence, and fails to make use of those means." Arfa v. Zamir, 905 N.Y.S.2d 77, 79 (App. Div. 2010) (affirming grant of motion to dismiss a fraud claim for failing to show reasonable reliance), aff'd, 952 N.E.2d 1003 (N.Y. 2011); accord Orlando v. Kukielka, 836 N.Y.S.2d 252, 255 (App. Div. 2007); Crigger v. Fahnestock & Co., 443 F.3d 230, 234 (2d Cir. 2006). Thus, a plaintiff "must show 'minimal diligence' or care that 'negat[es] its own recklessness.'"  Amusement Indus., Inc. v.

26

Buchanan Ingersoll & Rooney, P.C., No. 11 Civ. 4416, 2013 WL
628533, at *12 (S.D.N.Y. Feb. 15, 2013) (quoting Banque Franco-
Hellenique de Commerce Int'l et Mar., S.A. v. Christophides, 106
F.3d 22, 27 (2d Cir. 1997)) (alteration in original).  "Only
when matters are held to be peculiarly within defendant's
knowledge is it said that plaintiff may rely without prosecuting
an investigation," because the plaintiff would have "no
independent means of ascertaining the truth."  Crigger, 443 F.3d
at 234 (internal quotation marks, citation, and alterations
omitted); accord Orlando, 836 N.Y.S.2d at 255.  In other words,
the analysis of reasonable reliance under New York law must take
into account "the degree to which the truth was accessible."
Christophides, 106 F.3d at 27.

     In this case, the Second Amended Complaint contains only
one allegation for each resume plaintiff stating that they
"would not have contracted with TheLadders for its resume
rewriting services" if they had known the true nature of the
critique letters they received.  (SAC ¶¶ 70, 84, 93.)  No
allegation, however, gives rise to an inference of reasonable
reliance.  The resume critiques offered by the defendant were
followed immediately in the same document by advertisements,
which made it abundantly clear that, in offering the critiques,
the defendant was attempting to sell its resume rewriting
services.  (Addonizio Decl. Exs. 9, 10, 11.)  Therefore, the

critique letters on which the resume plaintiffs claim to have
relied, viewed as a whole, were more than sufficient to put an
ordinary person on alert regarding the content and purpose of
these letters.

Moreover, the plaintiffs claim that they were misled by the
critiques, not by the advertisements representing the critiques
to be "expert resume critiques." (Pls.' Mem. at 27 n.13, 28.)
The critiques allegedly misrepresented the quality of the
plaintiffs' resumes. (SAC ¶¶ 53-55.) However, the plaintiffs
cannot plausibly argue that the real quality of their resumes
was a "matter peculiarly within [the] defendant's knowledge,"
and therefore, they may not reasonably rely on such critiques
"without prosecuting an investigation." See Crigger, 443 F.3d
at 234. A premium member, having received criticisms that were
accompanied by advertisements of resume rewriting services,
certainly had other easily available, independent means to know
whether the resume was in fact well-written in order to make an
informed decision as to whether or not to purchase the services.
With all these factors taken together, the plaintiffs cannot
plausibly show reasonable reliance on the critiques. See
Colasacco v. Robert E. Lawrence Real Estate, 890 N.Y.S.2d 114,
117 (App. Div. 2009) (reversing denial of motion to dismiss and
holding that the plaintiffs' reliance on the real estate agent's
representations was unreasonable because the subject matter was

not within the exclusive knowledge of the agent and were ascertainable through ordinary means); Gomez-Jimenez v. N.Y. Law Sch., 943 N.Y.S.2d 834, 853 (Sup. Ct. 2012) (holding that the plaintiffs failed to plead reasonable reliance given that they had ample opportunity to discover the truth from other sources), aff'd, 956 N.Y.S.2d 54 (App. Div. 2012), leave to appeal denied, 987 N.E.2d 639 (N.Y. 2013).

Accordingly, the resume plaintiffs' claim for fraud fails to satisfy the essential element of reasonable reliance, and the Court need not reach the additional grounds such as representation, falsity, scienter, or particularity under Rule 9(b).  The defendant's motion to dismiss the resume plaintiffs' claim for fraud (Count V) is **granted**.


## VII.

The plaintiffs have brought a claim under GBL § 349, a New York statute prohibiting "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  N.Y. Gen. Bus. Law § 349(a). The plaintiffs concede in their papers that Lynn's GBL § 349 claim is untimely under the three-year statute of limitations applicable to this cause of action, see N.Y. C.P.L.R. § 214(2);(Pls.' Mem. at 19 n.6), leaving only the claims of plaintiffs Garcia, Morris, Reading, Ward, and Wilton (the "out-

of-state plaintiffs"), none of whom resided in New York at the time the claim arose.

### A.

The defendant first argues that the out-of-state plaintiffs do not have standing to assert a claim under GBL § 349, which prohibits "[d]eceptive acts or practices . . . in this state." N.Y. Gen. Bus. Law § 349(a) (emphasis added).  In Goshen v. Mut. Life Ins. Co. of N.Y., 774 N.E.2d 1190 (N.Y. 2002), the New York Court of Appeals interpreted this language in GBL § 349 as "evinc[ing] a legislative intent to address commercial misconduct occurring within New York." Id. at 1195.  Thus, a territorial test is embedded in GBL § 349: to state a claim under the statute, "the deception of a consumer must occur in New York." Id.; see also Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 123 (2d Cir. 2013).  In Cruz, the Second Circuit Court of Appeals held that this territorial test is satisfied if the deceptive transaction occurred in New York, thus allowing out-of-state plaintiffs to sue under the statute.[7]  720 F.3d at 123.

The Cruz court found that the pleading of a GBL § 349 claim

---

[7] The Cruz court recognized that, after Goshen was decided, a split of authority had developed over what the territorial test precisely is, namely, whether the statute requires that the deceptive transaction occur in New York or that the victim be deceived while located in New York.  Cruz, 720 F.3d at 123.  The Cruz court endorsed the "transaction-based" approach.  Id.

satisfied the territorial requirement because (1) the defendant
was allegedly paid in New York, (2) the defendant allegedly
required that all customer communications be directed to a New
York location, and (3) its agreement with the consumers
contained choice-of-law and forum-selection clauses selecting
New York law and New York courts for litigation arising out of
the agreement.  Id. at 123-24.  The court found these
allegations sufficient to support an inference that a deceptive
transaction occurred in New York.  Id.

The allegations in this case are substantially similar.
The defendant operated a website in New York and maintained its
bank account in New York.  (Tr. at 11.)  Many of the relevant
communications and transactions with the defendant, including
the registration, cancellation, review of website materials, and
various monetary transactions, apparently occurred on or through
the website itself, which is equivalent to communicating or
transacting directly with a New York address.[8]  Thus, the
plaintiffs allege more than "'hatching a scheme' or originating
a marketing campaign in New York" without any deceptive
transactions happening in New York.  Cf. Goshen, 774 N.E.2d at
1195.  Therefore, at this stage of the litigation, the out-of-

---

[8] In addition, even though not dispositive, some versions of the
Terms of Use also contained choice-of-law and forum-selection
clauses selecting New York law and courts in New York for
litigation arising out of the agreement.  (See, e.g., June 2010
Terms of Use at 5; August 2008 Terms of Use at 5.)

state plaintiffs have pleaded sufficient facts that, at the very least, give rise to a plausible inference that the allegedly deceptive transaction occurred in New York and that the defendant's conduct fell within the ambit of the "legislative intent to address commercial misconduct occurring within New York." Goshen, 774 N.E.2d at 1195. Hence, these out-of-state plaintiffs have standing to assert a claim under GBL § 349. See Cruz, 720 F.3d at 123-24.


**B.**

Under New York law, "[a] plaintiff under section 349 must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." Stutman v. Chem. Bank, 731 N.E.2d 608, 611 (N.Y. 2000). "A deceptive practice . . . need not reach the level of common-law fraud to be actionable under section 349." Id. at 612. Moreover, scienter and reliance, which are elements of common-law fraud, are not elements of a claim under GBL § 349. Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 647 N.E.2d 741, 745 (N.Y. 1995).

The plaintiffs allege that the various representations regarding the quality of the job listings and the services provided were materially misleading. The defendant argues that

32

they were not misleading and could not have caused the
plaintiffs' injuries because the Terms of Use disclosed that the
website would not guarantee the quality of the job listings and
the services.  Specifically, the Terms of Use provided that the
information and materials were provided on an "as is" or "as
available" basis.  (June 2010 Terms of Use at 1; see also Nov.
2009 Terms of Use at 1; Aug. 2008 Terms of Use at 1.)

The New York Court of Appeals specifically addressed this
scenario in Goshen, in which a defendant DSL service provider
made certain representations regarding the quality of its
internet service but also made disclaimers in its service
agreement stating that "the service is provided on an 'as is' or
'as available' basis."  774 N.E.2d at 1194.  The court held that
these disclaimers in the service agreement were not sufficient
to establish a defense as a matter of law, because the service
was allegedly "defective due to malfunctions largely or wholly
within defendants' control" and the defendants allegedly "knew
this to be the case and [the] promotional representations were
therefore knowingly deceptive."  Id. at 1197.[9]

---

[9] The defendant relies on Fink v. Time Warner Cable, 837 F. Supp.
2d 279 (S.D.N.Y. 2011), aff'd, 714 F.3d 739 (2d Cir. 2013), to
argue that the defendant's slogans were "non-actionable
puffery."  However, the language held to be puffery was limited
to two phrases touting the Internet service to be "blazing fast"
and "fastest, easiest way to get online."  Id. at 283; see also
Fink v. Time Warner Cable, 810 F. Supp. 2d 633, 644 (S.D.N.Y.
2011).  These are clearly puffery in contrast to statements

In this case, the plaintiffs allege that the defendant failed to review or pre-screen the job postings, which would be a failure wholly within the defendant's control. (SAC ¶¶ 31-32.) Therefore, the defendant's representations such as the website slogan stating that the website's "experts pre-screen all jobs so they're always $100K+," (SAC ¶ 24), would be "knowingly deceptive" and misleading. Similarly, the resume plaintiffs' allegation that misrepresenting a sales pitch as "expert resume critique" is also sufficient to support an inference that the defendant's behavior was "knowingly deceptive," especially in light of the alleged instructions to the sales personnel on how to represent themselves as "writer[s]

---

regarding more specific and ascertainable matters, such as the ones at issue in this case.

The defendant also relies on cases such as <u>Derbaremdiker v. Applebee's Int'l, Inc.</u>, No. 12 Civ. 1058, 2012 WL 4482057, at *4 (E.D.N.Y. Sept. 26, 2012), <u>aff'd</u>, 519 F. App'x 77 (2d Cir. 2013), and <u>Preira v. Bancorp Bank</u>, 885 F. Supp. 2d 672, 680 (S.D.N.Y. 2012), to argue that disclosures in the Terms of Use preclude the plaintiffs from pleading that the defendant's statements were "materially misleading." However, those cases did not involve a situation in which the terms of use contradicted the defendant's affirmative representations or in which the service was defective in a manner wholly within the defendant's control; thus, there was no inference of knowing deception. <u>See Derbaremdiker</u>, 2012 WL 4482057, at *5 ("[T]he statements on the receipt were not misleading or false, and . . . did not contradict and were not inconsistent with the statements on the Website and in the Official Rules"); <u>Preira</u>, 885 F. Supp. 2d at 674, 679 (holding that the statement that the gift card can be utilized "in the same manner . . . as Visa and MasterCard debit cards" was not rendered misleading by the mere fact that that <u>some</u> merchants did not allow the plaintiff to use the remaining values on the gift cards with split transactions).

and analyst[s]" in order to convince the client about their qualifications.[10]   (SAC ¶ 56.)   Accordingly, the disclaimers in the Terms of Use are insufficient to establish a defense as a matter of law.   See Goshen, 774 N.E.2d at 1197.

The defendant next argues that the plaintiff fails to plead that the allegedly deceptive practices caused the alleged injury, because there is no allegation identifying which advertisements the plaintiffs saw and because the TV advertisements were aired after the plaintiffs became premium members.   See Gale v. Int'l Bus. Machines Corp., 781 N.Y.S.2d 45, 47 (App. Div. 2004) (holding that the plaintiff failed to show causation because he did not allege that he saw any of the allegedly deceptive statements).   However, the plaintiffs allege that they became premium members or signed up for resume rewriting service as a result of seeing the defendant's representations on the website, (e.g. SAC ¶¶ 66, 76, 90, 100, 107, 112), and such allegations are sufficient to support the element of actual injury at this stage.   See Wilner v. Allstate Ins. Co., 893 N.Y.S.2d 208, 218 (App. Div. 2010) (finding sufficient support for actual injury based on the allegation

---

[10] As noted above, the plaintiffs do not argue that they relied on these advertisements such as those representing the resume critique to be "expert resume critique" service.   However, this concession is immaterial for purposes of the GBL § 349 claim because reliance is not an element of this claim.   Oswego, 647 N.E.2d at 745.

that "as a result of the defendant's conduct, [the plaintiffs] were forced to 'incur the costs and expense of hiring an attorney'").

Accordingly, the out-of-state plaintiffs have stated a claim under GBL § 349, and the defendant's motion to dismiss this claim is **denied** with respect to these plaintiffs, but **granted** with respect to plaintiff Lynn.  In addition, the plaintiffs agreed at oral argument to withdraw the claims under the Washington Consumer Protection Act and the California Unfair Competition Law (Counts VIII and IX) in the event that the GBL claim remains.  (Tr. at 20.)  Therefore, the claims in Counts VIII and IX are **dismissed**.

### VIII.

The plaintiffs seek leave to replead if any of the claims is dismissed.  Rule 15(a) provides that leave to file an amended complaint should be granted "freely . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2); see also Foman v. Davis, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded." (citation omitted)).  However, the "futility of amendment" is a valid basis for denying leave to amend.  See Foman, 371 U.S. at 182; Williams v. Citigroup, 659 F.3d 208, 214 (2d Cir. 2011).  In this case, the claims on which

the defendant's motion to dismiss is granted are insufficient as a matter of law, and the plaintiffs have not shown how the legal deficiencies can be cured after having amended the complaint twice. See Goodrich v. Long Island R.R. Co., 654 F.3d 190, 200 (2d Cir. 2011) ("[W]ithout any showing that the deficiencies in the complaint could be cured, we must conclude that repleading would be futile."). Accordingly, the plaintiffs' request for leave to replead is **denied**.


## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the defendant's motion to dismiss is **granted in part** and **denied in part**. The plaintiffs' request for leave to replead is **denied**. **The Clerk is directed to close Docket No. 35.**

**SO ORDERED.**

Dated:    New York, New York
          March 12, 2014            _____/s/_____
                                       **John G. Koeltl**
                              **United States District Judge**